IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JANO JUSTICE SYSTEMS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   NO. 08-3209 |
| | ) |
| SAM BURTON and SCB SYSTEMS, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION

RICHARD MILLS, U.S. District Judge:

Defendants Sam Burton and SCB Systems, Inc. (collectively, "Defendants") move to dismiss Counts II, III, and IV of Plaintiff Jano Justice Systems, Inc.'s ("JJS") Complaint. Defendants also move for judgment on the pleadings with regard to Count I.

With one small exception, the motions are denied.

1

## I.  BACKGROUND

JJS, a Mississippi corporation, brings this diversity suit against Sam Burton and his business, SCB Systems, Inc.  According to the allegations of the Complaint, which we take as true, JJS "provid[es] electronic data solutions to Circuit Clerks and county officers in several states including Illinois."  Compl. ¶ 3.  In carrying out its business, JJS relies on "certain proprietary information including source code, commonly known as CLERICUS MAGNUS Integrated Justice Information Systems."  Compl. ¶ 4.  This proprietary information allows users "to organize and integrate information and implement their job functions . . . ."  Compl. ¶ 5.

Burton is a major shareholder in JJS, "owning fifty-percent of all shares of stock."  Compl. ¶ 6.  Burton was also the vice president of JJS until his resignation in November 2006.  Compl. ¶ 7.  While so employed, or shortly thereafter, Burton began working as a sole proprietor.  Compl. ¶ 8.  Eventually, Burton incorporated his business and became the sole shareholder of SCB Systems, Inc. Compl. ¶¶ 9-10. SCB Systems "performs services including but not limited to maintenance on Clericus Magnus

software." Compl. ¶ 11. Burton, as well as other former JJS employees now working for him, "had access to [JJS's] proprietary information as well as knowledge pertaining to [JJS's] potential and existing customers." Compl. ¶ 13-14. SCB Systems competes directly with JJS and has "marketed and provided products and services to [JJS's] potential and existing customers," including work "that otherwise would have been done by [JJS]." Compl. ¶ 15-16.  Further, "Burton has held SCB Systems, Inc., out to [JJS's] customers as the same business . . . or as still connected to" JJS. Compl. ¶ 17.

JJS' Complaint contains four counts. Count I alleges that Burton breached his fiduciary duties of loyalty, good faith, due care, fairness, and avoiding self-dealing. Count II alleges that Defendants tortiously interfered with JJS' business relations. Counts III and IV charge Defendants with violations of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, and the Illinois (or Uniform) Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, respectively.

3

## II. STANDARDS

Defendants move to dismiss Counts II, III, and IV under Federal Rule Civil of Procedure 12(b)(6).[1] "A plaintiff's complaint need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,' sufficient to provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955, 1964 (2007)). All well-pleaded facts are taken as true and the complaint, as well as all possible inferences, are construed in the plaintiff's favor. *Id.*

With regard to Count I, Defendants move for judgment on the pleadings. However, it is unclear why Federal Rule of Civil Procedure 12(c) would apply prior to the close of pleadings. *See* Fed. R. Civ. P. 12(c). Nevertheless, the Court need not solve the mystery, because the same Rule 12(b)(6) standards can be applied. *See Guise v. BWM Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004).

---

[1] Defendants also argue that Federal Rule of Civil Procedure 9(b) applies to Count IV. That contention is discussed below in Part III-C.

## III.  ANALYSIS

A.  **Count I:  Breach of Fiduciary Duty**

First, the Complaint alleges that Burton breached various fiduciary duties owed to JJS.  Defendants argue that this claim is preempted by Illinois Trade Secrets Act, or, alternatively, fails to state a claim because Burton owed no fiduciary duties.

Section 8(a) of the Trade Secrets Act provides that "[e]xcept as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret."  Section 8(b) substantially limits the scope of subsection (a), adding that "[t]his Act does not affect: . . . (2) other civil remedies that are not based upon misappropriation of a trade secret."

Other states have explored similar preemption provisions under the Uniform Trade Secrets Act of 1985 and "[t]he dominant view is that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets."  *Hecny Transp., Inc. v. Chu*, 430 F.3d 402,

404-05 (7th Cir. 2005). Thus, the Court must determine whether the claim for a breach of fiduciary duties rests on the misappropriation of trade secrets or whether it stems from other conduct. *See id.* at 405 ("An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record.").

In Count I, JJS alleges that Burton breached his fiduciary duties, not simply by stealing information, but also by setting up a competing business and hiring away JJS's employees. With or without misappropriation of trade secrets, this could constitute the breach of a fiduciary duty under Illinois law. *See Hagshenas v. Gaylord*, 199 Ill. App. 3d 60, 68-73 (1990).

Alternatively, Burton urges dismissal because he owed no duties to JJS after his resignation as vice president. Typically, a resignation relieves a former director or officer of their fiduciary duties. *Id.* at 68. However, the Complaint alleges that Burton is also a 50% owner of JJS. Compl. ¶ 6. As such, fiduciary duties may remain. *See id.* at 68-73 (finding that 50% owner of a close corporation continued to owe fiduciary duties even after

resignation as director and officer). Thus, the motion for judgment on the pleadings is denied.

**B.     Counts II-III: Tortious Interference with Business Expectancy & Illinois Trade Secrets Act Claims**

The Complaint also alleges that Defendants tortiously interfered with business expectancies and violated the Illinois Trade Secrets Act. With regard to the former, JJS explains that it had customers of longstanding who were lost because of Defendants' use of proprietary information and other knowledge obtained from Burton's prior employment in solicitations.[2] Regarding the latter, JJS claims that Burton gained knowledge of proprietary information through his affiliation with JJS and then used that information to create and run SCB Systems, Inc.

Defendants object, suggesting that JJS should have provided more detail, including time, place, customer names, and other facts. These arguments, however, ignore the notice pleading standards applicable in federal courts. The Complaint here may not be detailed, but it certainly

---

[2]Defendants do not assert that this tort claim is preempted by the Illinois Trade Secrets Act.

suffices to appraise Defendants of the conduct forming the basis of the suit. As such, the motion to dismiss must be denied.

**C.    Count IV:  Illinois Deceptive Trade Practices Act Claims**

Finally, Defendants move for dismissal of Count IV, which alleges a violation of the IDTPA.  Defendants argue that IDTPA claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) and that the Complaint fails to meet this standard.  Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

Contrary to Defendants' suggestion, Rule 9(b) does not apply to every lawsuit under the IDTPA, but only to the specific claims that actually sound in fraud.  *Morton Grove Pharm., Inc. v. Nat. Pediculosis Ass'n, Inc.*, 525 F. Supp. 2d 1039 (N.D. Ill. 2007).  Thus, the Court must look to the actual allegations made in the Complaint to determine whether they allege fraud. "Fraud," as defined by the Illinois Supreme Court, "includes anything calculated to deceive, whether it be a single act or combination of circumstances, whether the suppression of truth or the suggestion of what

is false, whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gestures." *Strohmaier v. Yemm Chevrolet*, 211 F. Supp. 2d 1036, 1043 (N.D. Ill. 2001) (quoting *Regenold v. The Baby Fold, Inc.*, 68 Ill.2d 419, 435 (1977)).

In this case, Count IV alleges that Defendants' committed three deceptive trade practices:

> (1) pass[ing] off goods or services as those of another;
> (2) caus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> (3) caus[ing] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

Complaint at 14 (quoting 815 ILCS 510/2(a)(1)-(3)).

The latter two practices can occur without fraud. *Publ'ns Int'l, Ltd. v. Leapfrog Enters., Inc.*, 2002 WL 31426651, *6 (N.D. Ill. Oct. 29, 2002) (unpublished). Thus, in the absence of more tailored arguments about the existence of fraud in this case, the Court rejects application of Rule 9(b). *See Morton Grove*, 525 F. Supp. 2d at 1049.

The first deceptive trade practice, "pass[ing] off goods or services as those of another," does appear to involve deception and fraud, especially in light of the allegation that "Defendant Burton has held SCB Systems, Inc., out as the same business as plaintiff or still connected to the business of plaintiff." Compl. ¶ 17. Thus, Rule 9(b) applies. Given the lack of specificity in the Complaint, this portion of Count 4 must be dismissed. Nevertheless, the Court grants JJS leave to amend its Complaint.

## V.   CONCLUSION

Defendants' motion to dismiss [d/e 8] is GRANTED with respect to the portions of Count IV premised on deceptive trade practices within the meaning of 815 ILCS 510/2(a)(1). JJS's motion for leave to amend is GRANTED. Regarding Counts II, III, and the remaining portions of Count IV, Defendants' motion [d/e 8] is DENIED. Defendants' motion for "judgment on the pleadings" [d/e 8] on Count I is also DENIED.

IT IS SO ORDERED.

ENTERED:                                             December 11, 2008

FOR THE COURT:                                  /s Judge Richard Mills
                                                                United States District Judge