IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| JANO JUSTICE SYSTEMS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SAM BURTON and SCB SYSTEMS, ) <br> INC., ) <br> ) <br> Defendants. ) <br> ) | NO. 08-3209 |

# OPINION

RICHARD MILLS, U.S. District Judge:

Plaintiff Jano Justice Systems, Inc. seeks a preliminary injunction against Defendant Sam Burton and his company, Defendant SCB Systems, Inc.

The preliminary injunction is granted in part and denied in part.[1]

---

[1] Neither party has requested oral argument. *See* CDIL-LR 7.1(A)(2).

## I. BACKGROUND

Burton created an "integrated court system" program in 1991. In 1993, Burton joined with Vasco Bridges to create Jano Data Systems, Inc.

By 2002, Jano Data Systems had been replaced by Jano Justice. Further, Burton's original concept for an "integrated court system" had been transformed into a program called "Clericus Magnus." Burton is currently one of two 50% shareholders of Jano Justice. Jano's business largely concerns entering into license and maintenance agreements with public entities (particularly counties) regarding the use of Clericus Magnus.

After a number of years with Jano Justice (and Jano Data), Burton left the company. Soon after, he began operating a sole proprietorship in competition with Jano. In late 2007, this proprietorship was incorporated as Defendant SCB Systems, Inc. ("SCB"). SCB provides the same products and services as Jano and has managed to capture several of Jano's customers. Further, Defendants have hired one of Jano's employees to work for them.

## II.   PRELIMINARY INJUNCTION

The grant of a preliminary injunction involves "a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of USA, Inc.*, 549 F.3d 1079 (7th Cir. 2008) (internal quotations omitted). Whether an injunction is so demanded turns on a two-phase analysis. The first, a threshold phase, requires the injunction seeking party to make three showings: (1) some likelihood of success on the merits of the claims, (2) irreparable harm absent the injunction, and (3) the inadequacy of traditional legal remedies. The second phase involves a balancing between the harm accruing to the plaintiff from a lack of injunction and the harm that would afflict the defendant or other non-parties (i.e., the public) if the injunction were granted. *Id.*

### A.   Likelihood of Success on the Merits

The likelihood of success on the merits impacts both phases of the preliminary injunction analysis. To survive under the threshold phase, Jano Justice must merely show that the likelihood of success is better than

negligible. *Girl Scouts*, 549 F.3d at 1096 (citing *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 897 (7th Cir. 2001); *Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982)). In the balancing phase, however, a sliding scale approach applies, meaning that the greater Jano Justice's likelihood of success, the more likely it is entitled to a preliminary injunction. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992). This Court must determine the likelihood of Jano Justice's success on its three claims: (1) breach of fiduciary duties by Burton, (2) violations of the Illinois Trade Secrets Act by Burton and SCB, and (3) tortious interference with business relations by Burton and SCB.

First, Jano Justice claims that Burton owed it fiduciary duties as one-half owner and that those duties were breached when Burton opened a competing software company and hired away an employee from Jano Justice. Illinois courts have imposed liability in closely analogous circumstances. For instance, in *Hagshenas v. Gaylord*, an Illinois appellate court concluded that 50% shareholders owe each other duties similar to those of partners. 119 Ill. App. 3d 60, 68-73 145 Ill. Dec. 546, 557 N.E.2d

316 (1990). That duty was breached where the 50% owner opened a competing business and hired away several employees. *Id.* Under such authority, Jano Justice's likelihood of success on the merits is quite high.[2]

Second, Jano Justice seeks relief under the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*, which provides for the issuance of injunctions to prohibit actual or threatened misappropriation of a trade secret. Jano Justice claims that the program for Clericus Magnus is a "trade secret" and that an injunction is necessary to prevent its continued misappropriation by Defendants. In response, Defendants suggest that Clericus Magnus is not Jano's property and, in any event, does not qualify as a "trade secret."

Initially, it appears that Jano will succeed on its claim of ownership over Clericus Magnus. Burton's claims to ownership hinge entirely on his development of a predecessor of Clericus Magnus prior to his joining Jano Data Systems or Jano Justice Systems. However, he later became 50% owner of these companies and apparently allowed Jano to repeatedly assert

---

[2]Burton does not provide contrary authority. He briefly suggests that this action is *ultra vires* but cites no supporting legal authority. As such, the claim need not be considered.

its ownership of the product in its licensing agreements. Further, the predecessor program is not being marketed; rather, Jano is licensing "Clericus Magnus," a program that it developed from Burton's original concept and for which it is currently seeking a copyright. Therefore, it seems rather unlikely that Burton will succeed in claiming ownership over the current Clericus Magnus program.

Next, the Clericus Magnus software qualifies as a "trade secret." The Illinois Trade Secrets Act defines a "trade secret" as

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
> (1) is sufficiently secret to derive economic value, actual or potential from not being generally known to other persons who can obtain economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 ILCS 1065/2(d).

Defendants argue that the program is not a trade secret because "[t]he computer programming methods used in Clericus Magnus are well known

6

throughout the computer industry." This is a rather startling claim for Defendants to make, as their own revenues presumably derive from their control over the Clericus Magnus software. But, in any event, the claim fails. Jano makes no claims regarding general computer program techniques; instead, they seek to protect the specific database architecture and methodology of functions embedded in the Clericus Magnus program. As most of the company's revenue is apparently derived from licensing and servicing this software, this Court finds it fairly certain that Jano will be able to establish that Clericus Magnus' programming meets the first "trade secret" prong. The second is also met, as Jano's licensing and employment agreements contain provisions attempting to maintain confidentiality. As such, Clericus Magnus qualifies as a "trade secret" and Defendants licensing and servicing of that same software will likely be considered a "misappropriation." *See Computer Assocs. Int'l v. Quest Software, Inc.* 333 F. Supp. 2d 688, 695-97 (N.D. Ill. 2004). Therefore, Jano's likelihood of success on this claim is also great.

      Finally, Jano also has a strong claim for tortious interference with a

business expectancy. Under Illinois law, a tortious interference claim requries "(1) plaintiffs reasonable expectancy of entering into a valid business relationship; (2) defendant's knowledge of that expectancy; (3) defendants's intentional and unjustifiable interference that induced or caused a breach or termination of the expectancy; and (4) damage to plaintiff resulting from defendant's conduct." *F:A J Kikson v. Underwriters Labs., Inc.*, 492 F.3d 794, 800 (7th Cir. 2007) (citing *Voyles v. Sandia Mortgage Corp.*, 196 Ill. 2d 288, 256 Ill. Dec. 289, 751 N.E.2d 1126, 1133-34 (2001)). Jano asserts that such tortious interference occurred when Defendants solicited, and later obtained, business with several clients who had previously contracted with Jano. Defendant's rather baffling response is that those customers are no longer Jano's and thus there is no tortious interference. Jano's allegations, however, are precisely that: those customers left Jano because of Defendant's interference. In light of Jano's arguments and evidence, as well Defendants' failure to specifically defend against these arguments, it appears that Jano has a substantial likelihood of success on these claims as well.

B.    **Irreparable Harm and Inadequacy of Legal Remedies**

Jano has also adequately met the remaining two threshold requirements: irreparable harm and inadequacy of legal remedies. First, in cases of trade secret misappropriation and copyright infringement, there is a presumption of irreparable harm. *Computer Assocs. Int'l v. Quest Software, Inc.*, 333 F. Supp. 2d 688, 700 (N.D. Ill. 2004). This presumption has not been rebutted. Further, under Illinois law, irreparable harm has been presumed in cases where a former insider lures customers away through a competing business. *Tyler Enterprises of Elwood, Inc. v. Shafer*, 214 Ill. App. 3d 145, 158 Ill. Dec. 50, 573 N.E.2d 863, 866 (1991). Therefore, Jano has adequately established irreparable harm.

Similarly, Jano has shown the inadequacy of legal remedies. The loss of customer relationships and damages to goodwill cannot necessarily be remedied by a damages award. *FoodComm Int'l v. Barry*, 328 F.3d 300, 304-05 (7th Cir. 2003) (citing *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380 (7th Cir. 1984)). The insufficiency of a damages award is particularly pronounced in this case, where the universe of potential customers is

limited to the 102 counties of the state. As such, a loss of three customers, as alleged here, is quite significant, and an adequate damages remedy would prove difficult to fashion.

### C. Balancing

Turning to the second phase, this Court must balance the resulting harms from the imposition or denial of an injunction. "[T]he goal of the court is to choose the course of action that minimizes the costs of being mistaken." *Girl Scouts*, 549 F.3d at 1100 (citing *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 593 (7th Cir. 1985)). This purpose is achieved through use of the sliding scale approach: the greater the moving party's likelihood of success, the more likely it is entitled to a preliminary injunction. *Abbott Labs.*, 971 F.2d at 12. The sliding scale approach is "subjective and intuitive" and "permits district courts to 'weigh the competing considerations and mold appropriate relief.'" *Id.* (quoting *Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1436 (7th Cir. 1986)).

#### 1. Harms to Parties

As discussed above, Jano's likelihood of success on the merits is quite

high. Given this strong showing, an injunction will be proper unless the injunction would inflict a much greater harm on the Defendants than the denial of the injunction would inflict on Jano. But Defendants have made no such argument. Nor is it apparent that Defendants would bear a disproportionate harm. The harm, for both parties, is seeing their business curtailed. If the injunction is denied, then it is Jano that must suffer from continued competition from a former insider as well as the risk that Defendants will aid an additional competitor's entry into the Illinois market. If the injunction is granted, then it is Defendants who must see their business efforts restricted. Since Jano has established that it will more than likely prevail, it is Defendants who should have to suffer this harm.

### 2. Harms to Public

Finally, this Court must also consider the potential harms to the public. *Girl Scouts*, 549 F.3d at 1100. Jano summarily asserts that the public will not be harmed because the counties currently serviced by Defendants can always switch to a competitor. Unfortunately, no details are given regarding how long such a switch would take. Nor is it clear

11

whether the counties' systems would still remain functional without Defendants' servicing. Until such details are provided, this Court cannot properly assess the harm to the public. Therefore, the injunction will be limited in order to permit Defendants to continue servicing its software programs that are already in place with its county customers.

### III.  CONCLUSION & ORDER

Ergo, this Court GRANTS in part and DENIES in part Jano Justice's motion for a preliminary injunction [d/e 21]. The Court ORDERS that Defendants Sam Burton and SCB Systems, Inc., are prohibited from

 (a) Holding themselves out as having the ability to edit, service or modify the program of Clericus Magnus or any products owned, licensed, or created by Jano Justice Systems, Inc.;

 (b) Holding themselves out as having the ability to provide any information pertaining to the operation, architecture, or functions of Clericus Magnus;

 (c) Modifying, altering, installing, removing, editing, adding, copying, or logging in to Clericus Magnus or its code;

12

(d) Providing assistance as to processing reports generated by Clericus Magnus or component parts that function in conjunction with Clericus Magnus and its databases/libraries;

(e) Operating a business that provides software solutions to county circuit clerks offices or any of their adjoining offices that use court software services;

(f) Working for or with a provider or potential provider of software systems for circuit clerks offices or any of their adjoining offices that use court software services;

(g) Giving, providing, or offering any information pertaining to how Clericus Magnus works, functions, or operates; and

(h) Giving, providing, or offering any information pertaining to how the Illinois court systems works or functions to any existing or potential competitors of Jano Justice Systems.

However, because of the risk of harm to the public, this injunction does not prevent Defendants from continuing to maintain programs already in place.

IT IS SO ORDERED.

ENTERED: June 9, 2009

FOR THE COURT: /s Judge Richard Mills
United States District Judge