E-FILED
Thursday, 20 May, 2010  03:59:10 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

JANO JUSTICE SYSTEMS, INC.,    )
    )
    Plaintiff,    )
    )
v.    )    Case No. 08-cv-3209
    )
SAM BURTON and SCB SYSTEMS, INC.,    )
    )
    Defendants.    )

## OPINION

RICHARD MILLS, U.S. District Judge:

The Court held a hearing on March 31, 2010, to address a number of pending issues and motions in this case. Immediately following the hearing, the Court issued the following Text Order:

> The Plaintiff's Motion for Modification of Opinion [d/e 40] and the Plaintiff's Petition for Contempt [d/e 57] are hereby DENIED.

> The Preliminary Injunction Order contained in the Court's Opinion and Order entered June 10, 2009 [d/e 30] is valid and in effect until further order of this Court. The Court underscores the "harm to the public" exception contained in the last paragraph on page 13 of the Opinion and Order [d/e 30], allowing the Defendants to continue working for Will, Kane, and Winnebago Counties.

> Jano Justice Systems, Inc. is directed to post an injunction bond in the

amount of $90,000 with the Clerk of Court on or before April 9, 2010.

Opinion to follow.

Text Order of March 31, 2010.

This opinion explains the rationale behind that summary text order.

## I. BACKGROUND

Defendant Sam Burton is a 50% shareholder in the Plaintiff company, Jano Justice Systems, Inc.  The other Defendant is Burton's company, SCB Systems.  Vasco Bridges is the chief executive officer of Jano Justice Systems.  Both Plaintiff and Defendants provide computer technology services to counties and state circuit courts in Illinois.  All parties are involved with a computer program, or group of programs, called Clericus Magnus.

Burton was involved in developing the first version of Clericus Magnus, and it was installed in 1991 in Sangamon County, Illinois.  Eventually, Bridges and Burton went into business together, with Burton bringing the code, and Bridges providing the business expertise.  The Plaintiff company's predecessor, Jano Data Systems, was incorporated in Mississippi in 1993.  In 2002, Jano Justice Systems was incorporated in

2

Mississippi, and Jano Justice absorbed Jano Data.  Burton was a vice president of Jano Justice until late 2006.

Around the time Burton left Jano he started a sole proprietorship, and later, in late 2007, formed SCB Systems.  Defendants Burton and SCB Systems established a competing business that eventually took over some of the Plaintiff's work in Will, Winnebago, and Kane Counties. The Defendants maintain the Clericus Magnus program for clients, and have helped Winnebago County transition to a new provider, Justice Systems, Inc.

The Plaintiff filed suit on September 19, 2008, including four counts in the complaint:

Count I:     Breach of Fiduciary Duty Against Defendant Burton;

Count II:    Tortious Interference with Business Relationship Against Defendants Burton and SCB Systems;

Count III:  Illinois Trade Secret Act Against Defendants Burton and SCB Systems; and

Count IV:  Deceptive Trade Practices.

Count IV did not survive the Defendants' Motion to Dismiss.  *See*

3

Opinion of Dec. 11, 2008 [d/e 12].

The Plaintiff moved for a preliminary injunction [d/e 21] in April of 2009.  The Plaintiff sought to block the Defendants from doing any work with counties or state circuit courts in Illinois.  Neither party requested a hearing.

In a June 10, 2009 Opinion [d/e 30], the Court allowed the motion, with the limitation that the Defendants could continue to service the affiliated counties.  The Court found the likelihood of the Plaintiff prevailing on Counts 1—3 of the Complaint very high.  The Court reasoned that the exception was necessary because there was a high likelihood of harm to the public.

After the Opinion was entered, the Defendants moved for reconsideration [d/e 32].  The Defendants claimed that the preliminary injunction should not have issued without an evidentiary hearing, because there were dueling affidavits and the factual issues should have been resolved first.  The Defendants also disagreed with the Court's basis for granting the preliminary injunction.  Finally, the Defendants asked

the Court to set a bond.

The Motion to Reconsider was allowed to the extent that the Defendants sought the imposition of security for the preliminary injunction. The Court had inadvertently omitted the bond requirement. *See* Opinion of July 2, 2009 [d/e 34]. The motion was denied to the extent that the Defendants sought a hearing or other reconsideration.

The Court requested briefing on the amount of security. The Plaintiff refused to provide a specific number, stating that it was the Defendants' burden to provide an amount. Alternatively, the Plaintiff requested that the bond be of a nominal value.

The Defendants requested that the bond amount be $150,000, allegedly the value of a consulting contract which was lost when Kane County, Illinois decided against renewal. Vasco Bridges had sent a copy of the Opinion to the clients of the Defendants.

On July 21, 2009, the Plaintiff filed a Motion for Modification of Opinion [d/e 40]. The Plaintiffs wanted to eliminate the public harm exception that allowed the Defendant to continue to provide services to

Illinois counties.

Some additional issues arose in the course of briefing the Motion to Reconsider and the Motion for Modification.  First, the Plaintiff relied heavily on an Illinois case, *Hagshenas v. Gaylord*, 199 Ill. App. 3d 60 (2d Dist. 1990), when evaluating Count I of the Complaint.  The Court also relied heavily upon *Hagshenas* in establishing the preliminary injunction.  See Opinion and Order of June 10, 2009 [d/e 30], 4-5. *Hagshenas* imposed strict fiduciary duties on 50% shareholders of close corporations.  *Hagshenas* was a heavily criticized case, and as a result, the state legislature adopted an opt-out provision where a shareholder could essentially sever his responsibilities via waiver.  *See* 805 ILCS 5/7.90. After the Court entered the Preliminary Injunction Order, the Defendant sent the statutory waiver to the Plaintiff and filed a copy with the Court. The Defendant argued that Count I would fail because he no longer had fiduciary duties.

In response, the Plaintiff asserted that Count I should be governed by Mississippi law, because Jano Justice Systems is a Mississippi

corporation.  The parties made initial arguments regarding choice of law.

At the same time, the Defendants' affirmative defense based on copyright

law seemed to take shape, but the briefing was inadequate.  The Court

directed additional briefing on the choice of law and intellectual property

issues, and the parties complied.  *See* Order Requesting Additional

Briefing [d/e 51].

On November 20, 2009, the Plaintiff filed its Contempt Petition

[d/e 57].  The Plaintiff claims that the Defendants have violated the

preliminary injunction in working with competitors of Jano Justice

Systems.

A few days after the filing of the Contempt Petition, Winnebago

County, Illinois, filed its Motion for Leave to File an Amicus Brief [d/e

59], and permission was granted the same day.  *See* Text Order of Nov.

23, 2009.  The Amicus Brief dealt with the possibility of harm to the

public and Winnebago County if the Plaintiff's Motion for Modification

of Opinion [d/e 40] was granted.  Specifically, the Defendants were

involved in Winnebago County's transition from Clericus Magnus to a

new system provided by Justice Systems, Inc., and there were concerns about disruptions to the transition. The parties were given the opportunity to respond to the Amicus Brief.

Thereafter, the Plaintiff sought to strike the Amicus Brief. *See* Motion to Strike [d/e 66]. The Plaintiff made a number of aggressive claims, including that Winnebago County was colluding with the Defendants. *See id.* The Court denied the Motion to Strike. *See* Order of Dec. 30, 2009 [d/e 71].

From December 2009 to late February 2010, the Court took no action on the modification, contempt, choice of law, trade secret/copyright, or bond amount issues because mediation had been scheduled before Magistrate Judge Byron G. Cudmore. *See* Minute Entry of Dec. 1, 2009, Order of Jan. 5, 2010 [d/e 73].

Eventually, the mediation was cancelled. *See* Text Order of Feb. 18, 2010. The following day, the Court set a hearing for March 31, 2010 to resolve the pending issues in the case. *See* Order of Feb. 19, 2010 [d/e 81]. The hearing was held, and shortly thereafter the Court resolved the

outstanding issues via text order, indicating that an opinion would follow. *See* Minute Entry of March 31, 2010, Text Order of March 31, 2010.

In the Text Order, the Plaintiff was directed to post a bond with the Clerk of Court on or before April 9, 2010.  The Plaintiff failed to post a bond by the deadline.

## II. ANALYSIS

## A. PLAINTIFF'S MOTION FOR MODIFICATION OF OPINION

The Plaintiff has moved to eliminate the public harm exception to the preliminary injunction.  The information technology systems dealt with in this case relate to the organization and interconnection of records relating to courts, prosecutors, public defenders, law enforcement agencies, and county clerks.  In some instances, these systems relate to providing accurate information to law enforcement regarding active arrest warrants.  In short, this is serious business and the Court recognizes that injunctive relief should be carefully tailored to avoid harm to the public, and should not interfere with judicial and law enforcement activities.[1]

_____

[1] Principles of comity also make the Court reluctant to disrupt the operations of the courts of Illinois.

Therefore, the Court created an exception to the preliminary injunction, allowing the Defendants to maintain programs currently in place.

The Plaintiff argues that the programs can operate on their own and that if service or maintenance is needed the Plaintiff is better equipped to provide these services to the three counties in question. However, there are indications from the record that Kane County is vehemently opposed to working with the Plaintiff.

Winnebago County has been in the process of moving to another system. The Amicus Brief of Winnebago County has illuminated the way in which modifying the injunction could cause harm to the public. The County has expended in excess of $3 million in the transition to Justice Systems, Inc. Modifying the Order could result in the loss of substantial resources, as well as limiting the ability of state circuit courts and counties to operate efficiently. The Court declines to disrupt state and local government functions over a falling out between business associates.

## B. PLAINTIFF'S PETITION FOR CONTEMPT

The Plaintiff repeatedly argued at the hearing that the Defendants were part of a move to take away the Plaintiff's business in Winnebago County.  This argument is without merit.

In fact, it appears that the Plaintiff let the contract slip away.  In 2006, Winnebago County met with Jano representatives to discuss deficiencies with the Clericus Magnus program.  The dialogue was not fruitful, so Winnebago County began developing a Systems Requirement Definition (SRD)–a document describing how functions should be synthesized between various agencies.  In late 2007, Winnebago County published a Request for Proposal soliciting bids from information technology firms to implement the SRD.  Seven firms applied, but Jano was not one of them.  Justice Systems, Inc. was selected by the County in June 2008.

Accordingly, the Plaintiff's loss of the Winnebago County contract was not something that happened overnight, due to the Defendants' malfeasance.  Rather, it appears that the Plaintiff's product was no longer satisfactory to the client, and the Plaintiff did not submit a bid to retain

the client's business.  Given the Plaintiff's inaction, it was inevitable that Winnebago County would obtain another vender.

In addition, the Plaintiff's position is somewhat inconsistent with its earlier arguments regarding the Motion to Modify.  The Plaintiff argued at that time that enjoining the Defendants would not cause harm to the public, because the counties could always hire other companies for licensing and maintenance.

It appears that the Plaintiff's principal concern is that the Defendants were involved in the transition, and that their knowledge of Clericus Magnus made them the ideal candidates to create the data dictionary and perform other tasks.  While the Plaintiff's frustration is understandable, the conduct falls under the public harm exception.

The Court stated in its Preliminary Injunction Order that "this injunction does not prevent Defendants from continuing to maintain programs already in place."  Preliminary Injunction Order [d/e 30], 13. It is reasonable that the maintenance of a program would include helping the client migrate its data when the client obtains a new vender and a

new system.

The Plaintiff's narrow view of the language would also block Winnebago County from being able to efficiently transfer its information to a new integrated system.  The public harm exception should be construed broadly to allow local government to change vendors without disrupting the criminal justice system within the jurisdiction.

In addition, the Plaintiff argues that the Defendants are in contempt because they created a program that allows Will County to link the Clericus Magnus program with the Illinois State Treasurer's electronic payment system.

The Plaintiff argues that by creating such a program the Defendants violated the injunction in two ways: (1) they created a program that competes against the Plaintiff's electronic payment program; and (2) they necessarily divulged confidential information about Clericus Magnus to the State Treasurer's Office in setting up the interface.  The Plaintiff asserts that the State Treasurer's Office is a competitor.

This functionality is covered by the broad language of the public

13

harm exception.  Furthermore, the Court is unwilling to classify the State Treasurer's Office as a competitor.  The Court will not interfere with the electronic payment of fines and fees by the citizens of Will County.

The party seeking a contempt order must demonstrate by clear and convincing evidence that the respondent has violated an express and unequivocal command of the Court.  *F.T.C. v. Trudeau*, 579 F.3d 754, 763 (7th Cir. 2009).  The Plaintiff has not carried its burden.

## C. PRELIMINARY INJUNCTION

### 1. Revisiting a Previous Opinion

Once a court has decided upon a rule of law, "that decision should continue to govern the same issues in subsequent stages" of the same case.  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  Courts should be loathe to revisit prior decisions in the absence of extraordinary circumstances.  *See id.* at 817.

Generally, the Court would be unwilling to reconsider its decision regarding the preliminary injunction.  However, there are a number of factors that led the Court to reconsider its decision.  First, the dispute

relates to the provision of equitable relief, and a court sitting in equity has the responsibility to ensure that its rulings are equitable. Furthermore, the earlier decision was of a tentative nature, and thus subject to reexamination. *See Ellis v. United States*, 313 F.3d 636, 647-48 (1st Cir. 2002).

Second, changes in the controlling law give rise to the reconsideration of rulings. Of course, this exception generally applies if a superior court issues an opinion changing the rules and standards under which the case was decided or a law is changed by legislation. However, the exception applies in this case. Here, the relief sought was preliminary and was based entirely upon Illinois law. Later, a conflict of laws issue arose that was not recognized at the time of determining the preliminary injunction. It became necessary to determine which state's law applied. Given that the primary basis for granting the preliminary injunction had eroded, it was appropriate for the Court to revisit its decision.

2. Choice of Law

a. Second Restatement

In determining which state's substantive law to apply, federal courts sitting in diversity apply the choice of law rules of the forum state.  *See Sound of Music Co. v. Minnesota Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Therefore, the Court will look to Illinois choice of law rules to determine whether Mississippi or Illinois law applies.[2]

Illinois has adopted the Restatement (Second) of Conflict of Laws. *Barbara Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 61 (2007); *see generally Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, at 155-70 (2007).

Illinois has also previously adopted the internal affairs doctrine. Under the internal affairs doctrine, the forum applies the law of the state of incorporation when dealing with issues related to the internal governance of the corporation.

While the Second Restatement does not address the identical

---

[2] Choice of law analysis is only needed where the law selected will produce a different result or outcome. *Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 155 (2007).  In this case, there appears to be a true conflict between Illinois and Mississippi law on the issue of duties to the corporation.  Therefore, choice of law analysis is necessary on that issue.  However, both Illinois and Mississippi have adopted the Uniform Trade Secret Act, therefore there is no conflict on the trade secret/copyright issue.

16

situation before the Court (the duties of a 50% shareholder) it does

touch upon a number of related corporate topics in Chapter 13.  These

topics include:

> Identification of Shareholders, Restatement (Second) of Conflict of Laws § 303 (1971);
>
> Liability of Majority Shareholder, Restatement (Second) of Conflict of Laws § 306 (1971); and
>
> Directors' or Officers' Liability, Restatement (Second) of Conflict of Laws § 309 (1971).[3]
>
> These sections adopt the same rule:
>
>> [T]he local law of the state of incorporation will be applied . . . except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 309 (1971).

Therefore, as a general rule, the law of the state of incorporation

will apply.  Therefore the default presumption is that Mississippi law

---

[3] When the choice of law issue initially came to the surface, the Court requested additional briefing on the matter.  *See* Order Requesting Additional Briefing [d/e 51].  The Court noted that Illinois had adopted the Second Restatement, and indicated to the parties that Chapter 13 of the Second Restatement would be a good place to start.  Chapter 13 contains the sections cited above.  Unfortunately, the parties did not rely upon the Second Restatement in the briefing.

applies.

However, the Court must look to the factors contained in Section Six, to see if another state has the most significant relationship.[4]  The Court notes that the Commentary to the relevant Restatement sections cited above gives guidance on applying the Section Six factors when dealing with corporate matters.

*The Needs of the Interstate and International Systems*

The Court recognizes that some choice of law decisions will rarely upset the balance of the interstate system, such as personal injury actions.  *See Townsend*, 227 Ill. 2d at 170.  However, applying the corporate law of the forum state to an out-of-state corporation in a case dealing with fiduciary duties is likely to cause stress to the interstate system.

Closely held corporations are often incorporated in the state where headquartered, and the state of incorporation will probably be keen to

_____

[4] It is noteworthy that the Supreme Court of Illinois has indicated that the specific default rules of the Second Restatement are more valuable than the highly generalized rules contained in Section Six.  *See Townsend*, 227 Ill. 2d at 162-63.

18

protect the local interest.  Meddling by other states could be offensive to the state of incorporation.

*The Relevant Policies of the Forum*

Under this factor we will look at the public policy of Illinois with respect to the duties of shareholders in close corporations.  Illinois does not really have a cohesive policy in this regard, and the policy that does exist could be described as schizophrenic.  The *Hagshenas* decision is very aggressive, preventing in perpetuity competition by 50% shareholders.  On the other hand the 805 ILCS 5/7.90 waiver can be seen as an very liberal position.  *Hagshenas* and the statute are polar opposites.      The statute represents a response to *Hagshenas*, and it is unclear what the public policy of Illinois is.  The legislature arguably could have overturned *Hagshenas*, but did not.

Defendant Burton asserted at the hearing that the policy of Illinois is to allow shareholders in closely held corporations to opt out of any duties.  However, this must be viewed with the counterweight of *Hagshenas*.  Therefore it appears that this factor is neutral.

*The Relevant Policies of other Interested States and the Relative Interests of those States in the Determination of the Particular Issue*

The only other interested state is Mississippi.  Mississippi does not have a statutory waiver for close corporations, but it also does not have a case as rigid as *Hagshenas*.  Mississippi has adopted a middle of the road approach.  It appears that this factor is neutral as well.

*The Protection of Justified Expectations*

At the hearing, Defendant Burton essentially made a justified expectations argument.  He argued that it is natural to assume that Illinois law applies because the company does its business in Illinois, Burton is in Illinois, and the alleged conduct took place in Illinois. Apparently, Mr. Burton never expected that Mississippi law would apply.

However, that expectation of Mr. Burton is not justified.  Comment e of Section 302 of the Second Restatement, which is incorporated by reference into the comments of all the relevant sections cited above, discusses what expectations regarding corporations would be justified:

> Uniform treatment of directors, officers and shareholders is an important objective which can only be attained by having the rights and liabilities of those persons with respect to the corporation governed by a single law.  To the extent that they think about the matter, these

> persons would usually expect that their duties with respect to the corporation would be determined by the local law of the state of incorporation.

Restatement (Second) of Conflicts of Laws § 302 cmt. e (1971).

Therefore, while Mr. Burton may have had a subjective belief that Illinois law would determine his duties to the corporation, this belief was not objectively reasonable. The fact that the corporation is incorporated and headquartered there leads to a reasonable presumption that Mississippi applies to internal corporate government.

*The Basic Policies Underlying the Particular Field of Law*

It does not appear that the basic principles of the law of corporations align with either the Illinois or Mississippi rules. There is a basic principle that people with inside knowledge of the organization should not be allowed to compete against it. However, here we are talking about the rigidity of that rule, its application to 50% shareholders, and statutory exceptions. It would be inappropriate to impose general rules on such a narrow situation. Therefore, this factor is neutral.

*Certainty, Predictability and Uniformity of Result*

Mississippi is the clear choice under this factor.  Applying the law of the state of incorporation is certain and predictable.  The commentary provides that "in the absence of an explicitly applicable local statute, the local law of the state of incorporation has almost invariably been applied. This result furthers the choice-of-law factors of certainty, predictability and uniformity result . . ."  Restatement (Second) of Conflicts of Laws § 302 cmt. e (1971).

*Ease in Determination and Application of the Law to be Applied*

This factor also strongly leans in favor of Mississippi.  It is much easier to determine the state of incorporation than to have to analyze the geographic scope of the various operations of the corporation.

Therefore, based upon the Section Six factors, it appears that Mississippi is the state with the most significant relationship, and as a result Mississippi law should apply.

b. Additional Choice of Law Approach

The Defendants have raised a challenge to the imposition of Mississippi law by another avenue.  The Defendants argue that foreign

22

corporations operating in Illinois are subject to the shareholder waiver rule contained at 805 ILCS 5/7.90. In support of this proposition, the Defendants cite 805 ILCS 5/13.10, which states that foreign corporations operating in Illinois are subject to the same duties, restrictions, penalties, and liabilities as domestic corporations.

The case law on this issue is sparse. Defendants point to *Houck v. Martin*, where the Appellate Court of Illinois held that foreign corporations must comply with Illinois law prohibiting loans to officers and directors. 82 Ill. App. 3d 205 (4th Dist. 1980). *Houck* runs counter to the internal affairs doctrine and appears to be inconsistent with subsequent internal affairs doctrine cases. It also appears that *Houck* is an outlier. The Defendants' argument fails.

### 3. Likelihood of Success on the Merits

#### a. Standards

The likelihood of success on the merits impacts both phases of the preliminary injunction analysis. To survive under the threshold phase, the Plaintiff must merely show that the likelihood of success is better

than negligible. *Omega Satellite Prods. Co. v. City of Indianapolis*, 694 F.2d 119, 123 (7th Cir. 1982). In the balancing phase, however, a sliding scale approach applies, meaning that the greater Jano Justice's likelihood of success, the more likely it is entitled to a preliminary injunction. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992).

### b. Breach of Duties–Mississippi Law

The Plaintiff has argued that they are likely to prevail on the merits of Count I of its complaint (breach of fiduciary duty) under Mississippi law. The Plaintiff has a high likelihood of success, although it will not be as simple as it appeared to be in the June 10, 2009 Opinion.[5]

The most applicable Mississippi case is *Fought v. Morris*, 543 So.2d 167 (Miss. 1989). In *Fought*, the Mississippi Supreme Court held that the actions a majority stockholder takes toward a minority shareholder in a close corporation must be "intrinsically fair" when that majority

---

[5] In the Court's previous opinion it appeared that under the Illinois case of *Hagshenas*, the Defendant would be automatically barred from competing. Under Mississippi law, it is a little more circuitous.

stockholder stands to benefit as controlling stockholder.  *Id.* at 169.  The court also held that stockholders in a close corporation must bear toward each other the same relationship of trust and confidence which prevails in partnerships, rather than resorting to statutory defenses.  *Id.*  The court further stated that persons involved in close corporations should act at all times in good faith toward each other and the corporation.  *Id.* at 171; *see also Hall v. Dillard*, 739 So.2d 383, 386 (Miss. App. 1999).

The Plaintiff attempts to make *Fought* sound very close to *Hagshenas*, to support the notion that Defendant Burton does have a fiduciary duty not to usurp corporate opportunities.  The Defendants try to distinguish the case at bar from *Fought*, by pointing out that majority oppression is different than two 50% shareholders parting ways.

Ultimately, the test will be whether Defendant Burton bore toward the other 50% shareholder (Bridges) the same relationship of trust and confidence which prevails in a partnership.  Plaintiff points out that under Mississippi partnership law, partners have the duty of loyalty, which includes the duty to refrain from competing with the partnership.

*See* Miss. Code § 79-13-404(b)(3).

It appears at this point that Defendant Burton breached these duties.  While the use of Mississippi law complicates the Plaintiff's claim, the Plaintiff is still likely to prevail on the merits.

### c. Trade Secret/Copyright

Defendant Burton has defended the trade secret claim by asserting that he is the legitimate copyright holder of the Clericus Magnus system. The logic is that if he is the rightful holder, than he has not improperly acquired or used the information.

A computer program was installed in Sangamon County in 1991. The Plaintiff has said that this was Clericus Magnus.  The Defendants say that this was the first iteration of Clericus Magnus.

The Plaintiff's predecessor, Jano Data Systems, was not incorporated in 1991.  It is not entirely clear from the record whether Bridges (the other 50% shareholder) was involved in placing the program in Sangamon County.

It appears that at least within the first few years of the program,

"©1991 Sam Burton" appeared on the initial screen.  That remained on all copies of Clericus Magnus until 2007, when Bridges removed the notices, and replaced it with "© 1991, Jano Justice Systems, Inc."

A basic principle in copyright law is that when work is done for hire, the copyright accrues to the employers.  In this case, neither the Plaintiff or its predecessor was the employer of Burton in 1991, because Jano Data Systems was not incorporated until 1993.

"No publication or registration or other action in the Copyright Office is required to secure copyright."  U.S. Copyright Office, Circular 1, *Copyright Basics,* 3 (Oct. 2008).  Although, not required under U.S. law, Defendant Burton gave notice of copyright.  "Use of the notice may be important because it informs the public that the work is protected by copyright, identifies the copyright owner, and shows the year of first publication."  *Copyright Basics*, 4.

The transfer of copyright rights is normally made via contract, and the transfer is not valid unless the transfer is in writing and signed by the owner of the copyright.  *Copyright Basics*, 6.  In this case, Burton never

formally transferred his interest in Clericus Magnus to the Plaintiff.

Since this litigation has begun, the Plaintiff registered the copyright for Clericus Magnus.  "However, registration is not a condition of copyright protection."  *Copyright Basics*, 7.

The Court previously took notice that Defendant Burton allowed the contracts between clients and the Plaintiff to state that the Plaintiff corporation was the owner of the program.  However, the contracts should be viewed as assigning rights and responsibilities as between the corporation and the client.  Burton was an executive and 50% shareholder.  Therefore, those contracts are not dispositive on the issue.

 Consequently, it appears that the Defendants are more likely to prevail on the merits of the trade secret claim, due to the copyright defense.

> d. Evidentiary Hearing

The Defendants have complained that no evidentiary hearing was held before the Preliminary Injunction Order [d/e 30] issued.  It appears that the Defendants believed that a hearing was necessary before the

Court made a determination on the Preliminary Injunction after reconsideration.

An evidentiary hearing is necessary if the nonmoving party raises genuine issues of material fact in response to a motion for a preliminary injunction and they can produce evidence that will weaken the moving party's case as to impact the judge's decision to issue the preliminary injunction.  *See Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 814 (7th Cir. 2002).  At the hearing, the Court questioned the Defendants' counsel regarding what evidence they would attempt to establish if an evidentiary hearing was to be held.

Counsel indicated that an evidentiary hearing would be useful to fully establish the facts regarding the trade secret claim and the affirmative defense of copyright.  However, the facts related to these claims are sufficiently established in the record, and there is no need for an evidentiary hearing.

Therefore, because the Plaintiff is likely to succeed on the merits of at least one claim, the preliminary injunction can remain in effect.

29

# D. AMOUNT OF BOND

Compensation for a wrongfully issued injunction is limited to the amount of the bond.  *See Coyne-Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 393-94 (7th Cir.  1983).  Therefore, "[w]hen setting the amount of security, district courts should err on the high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000).  A wrongfully enjoined party seeking to recover the moneys from the injunction bond must still prove its loss, so "[a]n error in setting the bond too high thus is not serious." *Id.*  "Unfortunately, an error in the other direction produces irreparable injury, because the damages for an erroneous preliminary injunction cannot exceed the amount of the bond." *Id.*

Considering the representations by counsel at the hearing and the briefs on file, the Court has determined that $90,000 is an appropriate amount for the injunction bond in this case.

# E. FAILURE TO POST INJUNCTION BOND

As indicated above, the Text Order by the Court stated that the

Preliminary Injunction would remain in effect, but that the Plaintiff, Jano Justice Systems, was required to post a bond with the Clerk of Court on or before April 9, 2010.  *See* Text Order of March 31, 2010.

The Plaintiff did not post an injunction bond within the required period.  Therefore, the injunction should not remain in effect.  *See* Fed. R. Civ. P. 65.

## III. CONCLUSION

*Ergo*, because the Plaintiff has failed to post the necessary bond, the Court's Preliminary Injunction Order, entered June 10, 2009, is hereby WITHDRAWN.  There is no injunction currently in force in this matter.

IT IS SO ORDERED.

ENTER: May 20, 2010

FOR THE COURT:

s/ Richard Mills
United States District Judge

31